CR 23-156 ADM/DTS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> **DESEAN JAMES SOLOMON (1)** <br>   a.k.a. Black <br> **JAMAAL RASHED RICE (2)** <br>   a.k.a. Red Midnight <br> **LEONTAWAN LENTEZ HOLT (3)** <br>   a.k.a. Shotta, a.k.a. Shot Dog, <br>   a.k.a. Leon <br> **MICHAEL ALLEN BURRELL (4)** <br>   a.k.a. Skitz <br> **ANDREW CALVIN NOBLE (5)** <br>   a.k.a. Drewski, a.k.a. Drew | NO. <br><br> **TO BE FILED UNDER SEAL** |

## INDICTMENT

The Grand Jury charges:

### COUNT 1
### (Racketeer Influenced and Corrupt Organizations (RICO) Conspiracy)

#### The Enterprise

1. At all times relevant to this Indictment, **Desean James Solomon, a.k.a. Black** and **Jamaal Rashed Rice, a.k.a. Red Midnight**, the defendants, and others known and unknown to the Grand Jury, were members and associates of a criminal organization, namely, the "Minneapolis

Indictment—Page 1



SCANNED
APR 26 2023
U.S. DISTRICT COURT MPLS

Bloods Enterprise" (hereinafter, "the enterprise" and/or the "Bloods"), which was engaged in, among other things, acts of violence to include murder, assault, and robbery, as well as controlled substance distribution and firearms trafficking. At all times relevant to this Indictment, the Bloods operated in the District of Minnesota, and elsewhere.

2. The Bloods, including its leadership, membership, and associates, constituted an "enterprise," as defined by 18 U.S.C. § 1961(4), that is, a group of individuals associated in fact. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

<u>Structure of the Enterprise</u>

3. The structure and operation of the Bloods includes, but is not limited to, the following:

  a) The Bloods criminal street gang was founded in Los Angeles, California. The gang is involved with acts such as murder, assault, controlled substance trafficking, weapons trafficking, and other acts of violence against individuals, rival gangs, and/or law enforcement agencies worldwide. The gang has chapters actively operating in cities across the country. Though originally founded by a Bloods member from Los Angeles, the Bloods in Minnesota are not structurally connected to the Bloods in Los Angeles.

b) The Bloods' Minneapolis, Minnesota chapter has been in existence for several decades and controls and operates in South Minneapolis, Minnesota. The Bloods' territory is bordered at the northern edge by Lake Street (which would otherwise be numbered 30th Street), at the southern edge by approximately 46th Street, at the eastern edge by approximately Cedar Avenue, and at the western edge by Nicollet Avenue. This territory includes the neighborhood surrounding "George Floyd Square," (hereinafter, "the Square"), located at Chicago Avenue South and 38th Street East.

c) The Bloods have a formal structure, with two main subsets, namely, the Rolling 30s Bloods and the Outlaw Bloods, whose members work together to commit crimes. The hierarchy of the Bloods includes a head or leader of the gang, senior leaders, street-level leaders, and other members or associates. New recruits are called "YGs" (meaning young gangsters) or "YGBs" (meaning young gangster Bloods). The next level up is "OYG" or original young gangster. OYGs and YGs must fight, shoot, or make money to gain respect and increase their position in the gang. The next level up is "OG" or original gangsters who are well-respected members of the gang. The highest level is "double OG." All OGs are equal in rank and can give out "shots" or orders. "Enforcers" carry out the OGs' "shots" or orders by beating or assaulting the offender.

      d)    Members of the Bloods often display, publicly, indicia of membership, including the wearing of clothing, hats or other paraphernalia colored red; utilizing and displaying gang signs for the Bloods or the neighborhood in South Minneapolis; and obtaining body-based tattoos identifying the Bloods or its members, associates, or territory.

Purposes of the Enterprise

4.    The purposes of the enterprise included, but were not limited to, the following:

      a)    Enriching the leaders, members, and associates of the enterprise through, among other things, illegal trafficking and distribution of controlled substances and firearms;

      b)    Preserving and protecting the power, territory, reputation, and profits of the enterprise through threats, intimidation, violence, and destruction, including, but not limited to, acts involving murder, robbery, assault, and other acts of violence;

      c)    Promoting and enhancing the enterprise and its members' and associates' activities;

      d)    Keeping victims in fear of the enterprise and in fear of its leaders, members, and associates through threats of violence and actual violence;

    e)    Attacking and retaliating against rival gang members through acts of violence, including, but not limited to, acts involving murder, assault, and other acts of violence; and

    f)    Taking steps designed to prevent law enforcement's detection of the criminal activities of the enterprise and its leaders, members, and associates.

### Manner and Means of the Enterprise

5.    Among the manner and means by which the members and associates of the enterprise agreed to conduct and participate in the conduct of the affairs of the enterprise were the following:

    a)    Members and associates of the enterprise committed, and conspired, attempted, and threatened to commit acts of violence, including murder, robbery, and assault, to protect the enterprise's power, territory, and property.

    b)    To generate income, Bloods members and associates engaged in illegal activities under the protection of the enterprise, including controlled substance trafficking and distribution, weapons trafficking, and other illegal activities.

    c)    For acts of violence, retaliation, and protection against rival gangs, Bloods members and associates acquired, distributed, carried, and used firearms.

d) Members and associates of the enterprise employed and used gang-related terminology, symbols, phrases, and gestures to demonstrate affiliation with the gang.

e) To perpetuate the enterprise and to maintain power, members and associates of the enterprise committed and conspired, attempted, and threatened to commit acts involving murder and assault against individuals who they believed posed a threat to the enterprise or its members and associates.

f) Members and associates of the enterprise are forbidden from cooperating with law enforcement.

## The Racketeering Conspiracy

6. Beginning in or around 2020, and continuing through on or about the date of the filing of this Indictment, both dates being approximate and inclusive, within the District of Minnesota, and elsewhere, **Desean James Solomon, a.k.a. Black ("Solomon") and Jamaal Rashed Rice, a.k.a. Red Midnight ("Rice"),** the defendants, together and with other persons known and unknown to the Grand Jury, being persons employed by and associated with the Bloods enterprise, which was engaged in and the activities of which affected interstate and foreign commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c), that is, to conduct and participate,

directly and indirectly, in the conduct of the affairs of the Bloods enterprise through a pattern of racketeering activity consisting of multiple acts involving:

    a)    Murder, in violation of Minnesota Code, Sections 609.185, 609.19, 609.17, 609.05, and 609.175; and

    b)    Multiple offenses involving trafficking and distribution of controlled substances in violation of Title 21, United States Code, Sections 841 and 846.

7.    It was a further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

### Overt Acts

8.    In furtherance of the conspiracy, and to affect the object and purposes thereof, **Solomon** and **Rice**, the defendants, and others known and unknown to the Grand Jury, committed various overt acts, including, but not limited to, the following:

    a)    No later than in or about 2020, members of the Bloods controlled territory in and around Chicago Avenue South and 38th Street East in Minneapolis and controlled the drug trafficking that occurred there.

    b)    On or about June 14, 2020, **Solomon**, Michael Allen Burrell, a.k.a. Skitz, and other Bloods members went to the 200 Club, a nightclub in North Minneapolis, where they assaulted Victim 1 in the men's restroom.

    c)    After assaulting Victim 1 in the nightclub on or about June 14, 2020, **Solomon**, Burrell, and a Bloods member known to the Grand Jury left

the 200 Club and fired multiple rounds from firearms that they possessed, killing Victim 2.

d) On or about July 16, 2021, **Rice** possessed and sold pills containing fentanyl and methamphetamine, and pills containing heroin, fentanyl, and methamphetamine at and around the Square.

e) On or about August 6, 2021, **Rice** possessed and sold pills containing heroin and fentanyl at and around the Square.

f) On or about December 14, 2021, **Rice** coordinated the sale of pills containing fentanyl.

g) On or about February 25, 2022, **Rice** possessed and sold pills containing fentanyl at and around the Square.

h) On or about April 23, 2022, **Solomon**, Leontawan Lentez Holt, a.k.a. Shotta, a.k.a. Shot Dog, a.k.a. Leon, and other Bloods members went to Williams Pub, a bar located in and around the Uptown neighborhood of South Minneapolis, where they surrounded and physically attacked Victim 3.

i) After the physical altercation, Holt walked outside of Williams Pub to a vehicle that was parked nearby and then Holt handed a juvenile Bloods member a firearm.

j)  **Solomon**, Holt, the juvenile, and other Bloods members then walked westbound on Lagoon Avenue towards Victim 4, who was walking eastbound on Lagoon Avenue.

k)  Holt fired the gun he possessed towards Victim 4 at close range, and, as Victim 4 attempted to run away, the juvenile Bloods member fired multiple times in Victim 4's direction. Victim 4 was killed by the gunfire.

l)  On or about March 15, 2023, after federal law enforcement agents attempted to interview an incarcerated Bloods member, that Bloods member disclosed the investigation to the Bloods generally and stated that he would obstruct the investigation.

## NOTICE OF SPECIAL SENTENCING FACTORS

9.  On or about June 14, 2020, in the District of Minnesota, the defendant, **Desean Solomon, a.k.a. Black**, aided and abetted by others, did murder Victim 2, that is, did cause the death of Victim 2 with premeditation and with intent to affect the death of Victim 2 or another person, in violation of Minnesota Code, Sections 609.185(a)(1) and 609.05.

10.  On or about April 23, 2022, in the District of Minnesota, the defendant, **Desean Solomon, a.k.a. Black**, aided and abetted by others, did murder Victim 4 that is, did cause the death of Victim 4 with premeditation

and with intent to affect the death of Victim 4 or another person, in violation of Minnesota Code, Sections 609.185(a)(1) and 609.05.

11.    Beginning in or about 2021 and continuing to in or about February 25, 2022, in the District of Minnesota and elsewhere, the defendant, **Jamaal Rashed Rice, a.k.a. Red Midnight**, did combine, conspire, confederate, and agree, together and with others to knowingly and intentionally distribute at least 400 grams of a mixture or substance containing a detectable amount of N-phenyl-N propanamide and at least 100 grams of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N propanamide, both Schedule II controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(vi) and 846, and Title 18, United States Code, Section 2.

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT 2
### (Using and Carrying a Firearm in Furtherance of a Crime of Violence Resulting in Death)

1.    At all times relevant to this Indictment, the Bloods, as described in paragraphs one through five of Count One, which are realleged and incorporated by reference as if fully set forth herein, including its leadership, membership, and associates, constituted an "enterprise," as defined by 18 U.S.C. § 1959(b)(2), that is, a group of individuals associated in fact which was

engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

2. At all times relevant to this Indictment, the Bloods enterprise, through its members, leaders, and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, offenses involving trafficking and distribution of controlled substances, in violation of Title 21, United States Code, Sections 841 and 846.

3. On or about June 14, 2020, in the District of Minnesota, the defendants,

**Desean Solomon,**
**a.k.a. Black,**
and
**Michael Burrell,**
**a.k.a. Skitz,**

each aided and abetted by the other and by others known and unknown to the Grand Jury, for the purpose of maintaining and increasing position in the Bloods, an enterprise engaged in racketeering activity, did knowingly and intentionally murder Victim 2, in violation of Minnesota Code, Sections 609.185(a)(1) and 609.05, in violation of Title 18, United States Code, Sections 1959(a)(1) (Murder in Aid of Racketeering) and 2.

4. On or about June 14, 2020, in the District of Minnesota, the defendants,

**Desean Solomon,**
**a.k.a. Black,**
and
**Michael Allen Burrell,**
**a.k.a. Skitz,**

each aided and abetted by the other and by others known and unknown to the Grand Jury, did violate Title 18, United States Code, Section 924(c)(1)(A), that is, did knowingly and intentionally use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the Murder in Aid of Racketeering (Title 18, United States Code, Section 1959(a)(1)) of Victim 2, and did brandish and discharge said firearm; and in the course of such violation, did cause the death of Victim 2 through the use of a firearm, which killing was first-degree murder, as defined in Title 18, United States Code, Section 1111.

In violation of Title 18, United States Code, Sections 924(j) and 2.

## COUNT 3
### (Using and Carrying a Firearm in Furtherance of a Crime of Violence Resulting in Death)

1. Paragraphs 1 and 2 of Count Two are re-alleged and incorporated by reference as if fully set forth herein.

2. On or about April 23, 2022, in the District of Minnesota, the defendants,

**Desean James Solomon,
a.k.a. Black,**
and
**Leontawan Lentez Holt,
a.k.a. Shotta, a.k.a. Shot Dog,
a.k.a. Leon,**

each aided and abetted by the other and by others known and unknown to the Grand Jury, for the purpose of maintaining and increasing position in the Bloods, an enterprise engaged in racketeering activity, did knowingly and intentionally murder Victim 4, in violation of Minnesota Code, Sections 609.185(a)(1) and 609.05, in violation of Title 18, United States Code, Sections 1959(a)(1) (Murder in Aid of Racketeering) and 2.

3. On or about April 23, 2022, in the District of Minnesota, the defendants,

**Desean James Solomon,
a.k.a. Black,**
and
**Leontawan Lentez Holt,
a.k.a. Shotta, a.k.a. Shot Dog,
a.k.a. Leon,**

each aided and abetted by the other and by others known and unknown to the Grand Jury, did violate Title 18, United States Code, Section 924(c)(1)(A), that is, did knowingly and intentionally use and carry a firearm during and in

relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the Murder in Aid of Racketeering (Title 18, United States Code, Section 1959(a)(1)) of Victim 4, and did brandish and discharge said firearm; and in the course of such violation, did cause the death of Victim 4 through the use of a firearm, which killing was first-degree murder, as defined in Title 18, United States Code, Section 1111.

All in violation of Title 18, United States Code, Sections 924(j) and 2.

**COUNT 4**
**(Conspiracy to Distribute Controlled Substances)**

From in or about 2021, and continuing through at least on or about February 25, 2022, in the District of Minnesota and elsewhere, the defendants,

**Andrew Calvin Noble,**
**a.k.a. Drewski, a.k.a. Drew,**
and
**Jamaal Rashed Rice,**
**a.k.a. Red Midnight,**

did knowingly and intentionally conspire with others known and unknown to the Grand Jury to distribute at least 400 grams of a mixture or substance containing a detectable amount of fentanyl (also known by its chemical name N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide) and at least 100 grams of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N propanamide, both Schedule II controlled substances,

all in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 846.

## COUNT 5
**(Possession with Intent to Distribute Controlled Substances)**

On or about February 5, 2022, in the District of Minnesota, the defendant,

**Andrew Calvin Noble,
a.k.a. Drewski, a.k.a. Drew,**

did knowingly and intentionally possess with intent to distribute a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, all in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT 6
**(Possession of a Firearm in Furtherance of Drug Trafficking)**

On or about February 5, 2022, in the District of Minnesota, the defendant,

**Andrew Calvin Noble,
a.k.a. Drewski, a.k.a. Drew,**

did knowingly and intentionally possess a firearm, namely, a Smith and Wesson Model M&P 9 Shield M2 9mm handgun, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, conspiracy to distribute controlled substances, as charged in

Count 4 of this Indictment, and possession with intent to distribute controlled substances, as charged in Count 5 of this Indictment; all in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

## FORFEITURE ALLEGATIONS

<u>Racketeering</u>: Upon conviction for violation of Title 18, United States Code, Section 1962, as charged in this Indictment, defendants **Desean James Solomon, a.k.a. Black ("Solomon")** and **Jamaal Rashed Rice, a.k.a. Red Midnight ("Rice")**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 1963(a),

(1) Any interest acquired or maintained in violation of Section 1962;

(2) Any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, the enterprise described in Count 1, which defendants established, operated, controlled, conducted and/or participated in the conduct of, in violation of Section 1962; and

(3) Any property constituting or derived from proceeds obtained directly and indirectly from racketeering activity in violation of Title 18, United States Code, Section 1962.

<u>Possession of Controlled Substances with Intent to Distribute</u>: Upon conviction of one or more of the offenses alleged in Counts 4 and 5 of this Indictment, defendants **Andrew Calvin Noble, a.k.a. Drewski, a.k.a. Drew**, and **Jamaal Rashed Rice, a.k.a. Red Midnight** shall forfeit to the

Indictment—Page 16

United States pursuant to Title 21, United States Code, Section 853, any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of said violation, and any property used or intended to be used in any manner or part of or to commit or facilitate the commission of said violations, including but not limited to a Smith and Wesson, Model M&P 9, Shield M2, 9mm (serial number JCK8676).

Firearm Offenses: Upon conviction of one or more of the offenses alleged in Counts 2, 3, and 6 of this Indictment, defendants **Michael Allen Burrell, a.k.a. Skitz, Desean James Solomon, a.k.a. Black, Leontawan Lentez Holt, a.k.a. Shotta, a.k.a. Shot Dog, a.k.a. Leon,** and **Andrew Calvin Noble, a.k.a. Drewski, a.k.a. Drew**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c), any firearm and ammunition used in the commission of said violation, including but not limited to a Smith and Wesson, Model M&P 9, Shield M2, 9mm (serial number JCK8676).

If, as a result of any act or omission of the defendants, any property subject to forfeiture:

    a)    Cannot be located upon the exercise of due diligence;

    b)    Has been transferred to, sold to, or deposited with a third person;

    c)    Has been placed beyond the jurisdiction of the Court;

    d)    Has been substantially diminished in value;

    e)    Has been commingled with other property which cannot be subdivided without difficulty;

the United States intends, pursuant to Title 18, United States Code, Section 1963(m) and Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property.

A TRUE BILL:

_____
FOREPERSON

ANDREW M. LUGER
UNITED STATES ATTORNEY

_____
BRIAN W. LYNCH
Ohio Bar No. 86245
BEN TONKIN
New York Bar No. 5203880
Trial Attorneys
Organized Crime and Gang Section
U.S. Department of Justice
Washington, DC 20530

_____
ESTHER SORIA MIGNANELLI
Assistant United States Attorney
Minnesota Bar No. 403004
United States Attorneys' Office
District of Minnesota
Minneapolis, Minnesota 55415

_____
JOSEPH S. TEIRAB
Assistant United States Attorney
Minnesota Bar No. 389189
United States Attorneys' Office
District of Minnesota
Minneapolis, Minnesota 55415