# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

United States of America,                          Case No. 23-cr-156 (SRN/TNL)

      Plaintiff,

v.                                                                    **ORDER**

Desean James Solomon (1),
Jamaal Rashed Rice (2),
Leontawan Lentez Holt (3),
Michael Allen Burrell (4), and
Andrew Calvin Noble (5),

      Defendants.

---

David Green, Esther Soria Mignanelli, and Thomas Calhoun-Lopez, Assistant United States Attorneys, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for the Government);

Thomas C. Plunkett, 101 East Fifth Street, Suite 1500, St. Paul, MN 55101 (for Defendant Solomon);

Kevin C. Riach, 125 Main Street Southeast, Suite 339, Minneapolis, MN 55412 (for Defendant Rice);

F. Clayton Tyler and Karen E. Mohrlant, F. Clayton Tyler, P.A., 331 Second Avenue South, Suite 230, Minneapolis, MN 55401 (for Defendant Holt);

Steven E. Wolter, Kelley, Wolter & Scott, P.A., 431 South Seventh Street, Suite 2530, Minneapolis, MN 55415 (for Defendant Burrell); and

Lee R. Johnson, Johnson & Greenberg PLLP, 5775 Wayzata Boulevard, Suite 700, St. Louis Park, MN 55416 (for Defendant Noble).

---

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on

several pretrial motions filed by the United States of America (the "Government") and

1

Defendants Desean James Solomon, Jamaal Rashed Rice, Leontawan Lentez Holt, Michael Allen Burrell, and Andrew Calvin Noble.

A hearing was held on January 5, 2024. ECF No. 199. Thomas Calhoun-Lopez appeared on behalf of the Government. Thomas C. Plunkett appeared on behalf of Solomon. Kevin C. Riach appeared on behalf of Rice. F. Clayton Tyler appeared on behalf of Holt along with Karen Mohrlant. Steven E. Wolter appeared on behalf of Burrell. Lee R. Johnson appeared on behalf of Noble.

The Court will address these motions as follows: (I) Government motions; (II) expert discovery; (III) Rule 404(b) motions; (IV) post-conspiracy statements/*Bruton*[1] motions; (V) general discovery/Rule 16 motions; (VI) Jencks Act motions; (VII) *Brady*[2] and *Giglio*[3] motions; (VIII) grand jury motions; (IX) disclosure of informants; (X) severance, including motions to sever Defendants from one another and for severance of certain counts; (XI) motions for a bill of particulars; and the remaining motions by (XII) Solomon, (XIII) Holt, and (XIV) Noble.

Based upon the record, memoranda, and oral arguments of counsel, **IT IS HEREBY ORDERED** as follows:

## I. GOVERNMENT MOTIONS

The Government's Motions for Discovery Pursuant to Federal Rules of Criminal Procedure 16(b), 12.1, 12.2, 12.3, and 26.2, ECF Nos. 87 and 123, are **GRANTED IN PART** and **DENIED IN PART**. *See infra* Section II.

---

[1] *Bruton v. United States*, 391 U.S. 123 (1968).
[2] *Brady v. Maryland*, 373 U.S. 83 (1963).
[3] *Giglio v. United States*, 405 U.S. 150 (1972).

The Government's motions seek discovery available under Federal Rules of Criminal Procedure 12.1, 12.2, 12.3, 16(b), and 26.2, as well as the establishment of deadlines for the disclosure of expert witnesses.  *See infra* Section II.  None of Defendants filed a response to the Government's motions.  Likewise, at the hearing, none of Defendants voiced an objection to the Government's motions.

## II. EXPERT DISCOVERY

Solomon's Motion for Discovery of Rule 16(a)(1)(G) Evidence – Experts, ECF No. 121, and the requests of the Government, Rice, Burrell, and Noble are **GRANTED IN PART** and **DENIED IN PART**.

Through a number of different orders, the Court previously set the deadline for principal expert disclosures at 28 days before trial and 14 days before trial for rebuttal experts.  ECF No. 80 at 4; ECF No. 85 at 3-4; ECF No. 140 at 2.

In its motions, the Government proposed deadlines for the disclosure of any testimony the parties intend to use under Rules 702, 703, or 705 of the Federal Rules of Evidence at 30 days before trial for principal experts and 10 days before trial for rebuttal experts.  ECF No. 87 at 2; ECF No. 123 at 2.

Solomon and Noble have each requested immediate disclosure.  ECF No. 121 at 1 ("forthwith") (Solomon); ECF No. 143 at 1 ("immediately"), ECF No. 147 at 1 ( ("immediately") (Noble).  *See also infra* Sections V, XVI.  Rice and Burrell have generally requested expert discovery without a specific proposed timeline.  ECF No. 185 at 2 (Rice);  ECF No. 94 at 2 (Burrell).  *See also infra* Section V.

At the hearing, Defendants proposed that principal experts be disclosed 90 days

prior to trial, asserting additional time was needed due to the type and number of experts anticipated as well as the experts' availability. The Government responded that it believed 90 days was excessive under the circumstances, but offered to make principal expert disclosures 60 days before trial as a compromise. The parties were all in agreement as to 21 days before trial for rebuttal expert disclosures.

There is good cause for modification of the deadline for principal expert disclosures. *See* Fed. R. Crim. P. 16(a)(1)(G)(ii) (time for expert disclosures "must be sufficiently before trial to provide a fair opportunity for the defendant to meet the government's evidence"). No later than 60 days prior to trial, the parties shall make their principal expert disclosures, and, no later than 21 days prior to trial, the parties shall make any rebuttal expert disclosures. *See* Fed. R. Crim. P. 16(a)(1)(G), (b)(1)(C).

### III. RULE 404(b) MOTIONS

Solomon's Pretrial Motion for Pretrial Disclosure of Rule 404 Evidence, ECF No. 106, Rice's Motion for Disclosure of Rule 404(b) Evidence, ECF No. 184, Holt's Motion for Disclosure of Rule 404 Evidence, ECF No. 167, Burrell's Motion for Disclosure of 404(b) Evidence, ECF No. 95, and Noble's Motion for Disclosure of 404 Evidence, ECF No. 144, are **GRANTED IN PART** and **DENIED IN PART**.

Defendants seek the disclosure of evidence the Government intends to introduce at trial under Rule 404(b) of the Federal Rules of Evidence. While Defendants and the Government made varying proposals on the timeline for disclosure prior to the hearing, the Government offered and Defendants agreed to 21 days before trial for disclosure at the hearing.

4

Rule 404(b) requires the Government to provide reasonable written notice before trial when evidence of a crime, wrong, or other act will be used to "prov[e] motive opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2); *see* Fed. R. Evid. 404(b)(3)(A) (prosecutor must "provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it"), (C) (in writing).  The Government is required to "articulate in the notice the permitted purpose for which the [Government] intends to offer the evidence and the reasoning that supports the purpose." Fed. R. Evid. 404(b)(3)(B).  Rule 404(b) does not, however, require that the Government "disclose directly or indirectly the names and addresses of its witnesses, something it is currently not required to do under [Fed. R. Crim. P.] 16."  Fed. R. Evid. 404(b) advisory committee's notes, 1991 Amendments; *see United States v. Polk*, 715 F.3d 238, 249 (8th Cir. 2013); *United States v. Hamilton*, 452 F.2d 472, 479 (8th Cir. 1971).

Further, "Rule 404(b) . . . applies to the admission of wrongful-act evidence that is extrinsic to the charged offense . . . ."  *United States v. Ruiz-Chavez*, 612 F.3d 983, 988 (8th Cir. 2010).  It does not apply to intrinsic evidence.  *Id.*; *see also United States v. Beltz*, 385 F.3d 1158, 1162 (8th Cir. 2004) ("Evidence that is relevant to the crime charged is not other crimes evidence.").  "Evidence of other wrongful conduct is considered intrinsic when it is offered for the purpose of providing the context in which the charged crime occurred."  *Ruiz-Chavez*, 612 F.3d at 988 (quotation omitted).

No later than 21 days prior to trial, the Government shall provide reasonable written notice of all "extrinsic" evidence then known to the Government that the

Government intends to offer within the purview of Rule 404(b), "articulat[ing] the permitted purpose for which the [Government] intends to offer the evidence and the reasoning that supports the purpose." Fed. R. Evid. 404(b)(3)(B). If the Government subsequently discovers additional extrinsic evidence, it shall provide reasonable notice of such evidence as soon as practicable after such discovery. *See* Fed. R. Evid. 404(b)(3)(C).

### IV. POST-CONSPIRACY STATEMENTS/*BRUTON* MOTIONS

Solomon's Motion to Disclose Post-Conspiracy Statements of Co-Defendant and Unindicted Co-Conspirator, ECF No. 110, Rice's Motion for Disclosure of Post-Conspiracy Statements of Co-Defendants or Unindicted Co-Conspirators, ECF No. 187, Burrell's Motion to Disclose Post-Conspiracy Statements of Alleged Co-Conspirators, ECF No. 98, Noble's Motion for Disclosure of Post-Conspiracy Statements of Co-Defendants, ECF No. 146, and Holt's oral request[4] for the same are **DENIED IN PART** to the extent Defendants seek disclosure under Federal Rule of Criminal Procedure 16 and **DENIED WITHOUT PREJUDICE IN PART** as premature to the extent Defendants seek relief under *Bruton*.

Pursuant to Rule 16, *Bruton*, and cases applying *Bruton*, Defendants seek an order compelling the Government "to give notice and disclose intent to use or refer to, and/or introduce into evidence at trial the statements or confessions of any defendant or unindicted co-conspirator, together with a designation of which statement or confession

---

[4] At the hearing, Holt noted that he had not filed a motion seeking the disclosure of post-conspiracy statements of his co-defendants and any unindicted co-conspirators and orally moved to join these motions.

the [G]overnment plans to so utilize." ECF No. 110 at 1; *see also* ECF No. 187 at 1; ECF No. 98 at 1; ECF No. 146 at 1. Defendants also seek "leave to file motions for severance, suppression, and/or in limine" based on those disclosures. ECF No. 110 at 1; *see also* ECF No. 187 at 1; ECF No. 98 at 1.

The Government states that it "is unaware of a co-defendant in this case that has provided any testimonial 'confession' and will not be called to testify at trial as a witness offered by the United States." Gov't Consol. Resp. at 10, ECF No. 191. The Government objects to Defendants' motions to the extent they seek "notice regarding statements of unindicted or non-defendant co-conspirators," asserting that "such requests are beyond the reach of *Bruton* and its progeny and should be denied." Gov't Consol. Resp. at 10. The Government additionally states that *Bruton* "does not apply where a co-defendant testifies if one so elects to in this case." Gov't Consol. Resp. at 11. *See, e.g.*, *United States v. Coco*, 926 F.2d 759, 761 (8th Cir. 1991) ("*Bruton*'s prohibition applies only when the declarant co-defendant does not testify at trial.").

Rule 16 "does not cover testimony by a government witness as to an oral statement by a conspirator in the course of the conspiracy. It covers oral statements made by a defendant 'in response to interrogation by any person then known to the defendant to be a government agent.'" *United States v. Hoelscher*, 914 F.2d 1527, 1535 (8th Cir. 1990) (quoting *United States v. Vitale*, 728 F.2d 1090, 1093-94 (8th Cir. 1984)). Rule 16 "stresses that only 'statements made by the defendant' are discoverable." *United States v. Manthei*, 979 F.2d 124, 126 (8th Cir. 1992). Therefore, the Court denies Defendants' motions insofar as they seek pretrial disclosure of statements or confessions of any co-

defendant or unindicted co-conspirator pursuant to Rule 16.

*Bruton* held that the admission of an incriminating statement by a non-testifying co-defendant at a joint trial violates the defendant's rights under the Confrontation Clause.  391 U.S. at 137; *United States v. Singh*, 494 F.3d 653, 658 (8th Cir. 2007). "*Bruton*, however, does not preclude the admission of otherwise admissible statements by a co-conspirator under Rule 801(d)(2)(E)."  *Singh*, 494 F.3d at 658 (citing *United States v. Mickelson*, 378 F.3d 810, 819 (8th Cir. 2004) ("However, when the statements are those of a co-conspirator and are admissible under Federal Rule of Evidence 801(d)(2)(E), the Sixth Amendment and *Bruton* are not implicated.")).  Therefore, "co-conspirators' statements made in furtherance of a conspiracy and admitted under Rule 801(d)(2)(E) are generally non-testimonial and, therefore, do not violate the Confrontation Clause as interpreted by the Supreme Court."  *Id.* (citing *Crawford v. Washington*, 541 U.S. 36, 51-54 (2004)); *see United States v. Lee*, 374 F.3d 637, 644 (8th Cir. 2004) (applying *Crawford* in holding that casual statements to an acquaintance, statements to a co-conspirator, and business records are not testimonial).

At this juncture, it is not clear what evidence the Government will actually seek to introduce at trial and whether any *Bruton* issues will in fact arise.  *See United States v. Needham*, No. 12-cr-206(5) (DWF/LIB), 2012 WL 6755386, at *4 (D. Minn. Dec. 10, 2012), *report and recommendation adopted*, 2013 WL 25213 (D. Minn. Jan. 2, 2013); *United States v. Billups*, 442 F. Supp. 2d 697, 706 (D. Minn. 2006).  These types of evidentiary issues, and any appropriate responsive measures, are matters best left to the sound discretion of the district judge at trial.

To the extent post-conspiracy statements of any co-defendant or unindicted co-conspirators are discoverable under *Brady*, the Jencks Act, or some other authority, the Court expects the Government will honor its disclosure obligations. *See United States v. Abari*, No. 19-cr-103 (MJD/ECW), 2019 WL 2417711, at *1 (D. Minn. June 10, 2019); *United States v. Perez*, No. 16-cr-154(4) (ADM/BRT), 2018 WL 3000336, at *2 (D. Minn. June 15, 2018). Defendants' request for leave to file motions related to any *Bruton* issues, however, is premature and denied without prejudice.

## V. GENERAL DISCOVERY/RULE 16 MOTIONS

Burrell's Motion for Disclosure of Statements, Admissions, and Answers, ECF No. 96, is **DENIED AS MOOT**, and Solomon's Pretrial Motion for Discovery and Inspection, ECF No. 111, Rice's Motion for Discovery and Inspection, ECF No. 185, Holt's Motion for Discovery and Inspection, ECF No. 168, Burrell's Motion for Discovery and Inspection, ECF No. 94, and Noble's Motion for Discovery and Inspection, ECF No. 143, are **GRANTED IN PART** and **DENIED IN PART**

Beginning with Burrell's Motion for Disclosure of Statements, Admissions, and Answers, ECF No. 96, Burrell seeks disclosure of statements he has made. In its response, the Government stated that it "has disclosed any statements currently in its possession." Gov't Consol. Resp. at 3. At the hearing, Burrell confirmed this motion was moot.

Turning to the remaining discovery motions, generally speaking, Defendants largely seek discovery subject to disclosure under Rule 16(a)(1)(A) through (G) of the Federal Rules of Criminal Procedure. *See also supra* Section II. The Government states

that it "has and will continue to comply with all of its discovery obligations under the Federal Rules of Criminal Procedure and applicable case law." Gov't Consol. Resp. at 3.

Defendants' motions are granted in part to the extent their discovery requests seek responsive information subject to disclosure under Rule 16(a)(1)(A) though (F) that remains in the Government's control and has not yet been produced. Defendants' motions are further granted in part to the extent their discovery requests seek discovery and disclosures ordered produced elsewhere in this Order or that the Government is otherwise obligated to disclose by law. *See, e.g.*, *supra* Section II and *infra* Section VII. Defendants' discovery requests are denied in all other respects. *See United States v. Johnson*, 228 F.3d 920, 924 (8th Cir. 2000).

Defendants further request that, in the event the Government subsequently discovers additional materials previously ordered to be produced, that their counsel be notified. While the Court has no reason to doubt that the Government will honor its continuing disclosure obligations under Rule 16(c), any responsive information or material subject to disclosure that subsequently comes into the Government's possession, knowledge, or control shall be produced in a timely fashion.

## VI. JENCKS ACT MOTIONS

Solomon's Pretrial Motion for Early Disclosure of Jencks Act Material, ECF No. 113, Rice's Motion for Disclosure of Jencks Act Material, ECF No. 186, Holt's Motion for Pretrial Disclosure of Jencks Act Material, ECF No. 166, and Noble's Motion for Early Disclosure of Jencks Materials, ECF No. 149, are **DENIED**.

Solomon, Rice, Holt, and Noble seek early disclosure of Jencks Act materials.

10

The Government objects to any order requiring early disclosure of Jencks Act materials, but proposes voluntarily disclosing such materials no later than three business days prior to trial.  Gov't Consol. Resp. at 7.

By its terms,

> [t]he Jencks Act does not compel the government to produce a statement or report of a government witness until after the witness has testified on direct examination, after which the defendant may move for the production of any statements in the government's possession made by that witness relating to the subject matter of his testimony.

*United States v. Green*, 151 F.3d 1111, 1115 (8th Cir. 1998); *see* 18 U.S.C. § 3500(b). "Although in many cases the government freely discloses Jencks Act material to the defense in advance of trial, the government may not be required to do so."  *Green*, 151 F.3d at 1115 (quotation omitted); *accord United States v. Wilson*, 102 F.3d 968, 971-72 (8th Cir. 1996).  The requests for early disclosure of Jencks Act materials are therefore denied.  While the Court is not ordering the Government to disclose Jencks Act materials early, the Court encourages the parties to disclose such materials no less than three business days before trial as proposed by the Government.

## VII. *BRADY* & *GIGLIO* MOTIONS

Solomon's Motion for Disclosure of *Giglio* Material, ECF No. 114, Rice's Motion to Compel the Government to Produce Favorable Evidence, ECF No. 181, Holt's Motion for Disclosure of Evidence Favorable to the Defendant, ECF No. 165, Burrell's Motion to Disclose Favorable Evidence, ECF No. 97, and Noble's Motion to Compel Attorney for the Government to Disclose Evidence Favorable to the Defendant, ECF No. 145, are

**GRANTED IN PART** and **DENIED IN PART**.

Defendants move for an order compelling the Government to disclose evidence favorable to them under *Brady*, *Giglio*, and their progeny.  The Government states that "it will fully comply with its discovery obligations under *Brady* and *Giglio* and will disclose any evidence favorable to the defendant."  Gov't Consol. Resp. at 6.  At the hearing, the Government acknowledged that *Brady* requires prompt disclosure.

"[T]he Due Process Clause of the Fifth Amendment requires the government to disclose to the accused favorable evidence that is material to guilt or punishment." *United States v. Dones-Vargas*, 936 F.3d 720, 722 (8th Cir. 2019) (citing *Brady*, 373 U.S. at 87); *see also* Fed. R. Crim. P. 5(f).  "Under *Brady* and its progeny, prosecutors have a duty to disclose to the defense all material evidence favorable to the accused, including impeachment and exculpatory evidence."  *United States v. Robinson*, 809 F.3d 991, 996 (8th Cir. 2016); *accord United States v. Wright*, 866 F.3d 899, 908 (8th Cir. 2017); *see United States v. Whitehill*, 532 F.3d 746, 753 (8th Cir. 2008) ("*Brady* applies to exculpatory and impeachment evidence, whether or not the accused has specifically requested the information." (citations omitted)).  "The [Supreme] Court has extended *Brady* protection to witness-credibility evidence when the reliability of the witness 'may well be determinative of guilt or innocence.'"  *United States v. Sigillito*, 759 F.3d 913, 930 (8th Cir. 2014) (quoting *Giglio*, 405 U.S. at 154); *accord Dones-Vargas*, 936 F.3d at 722; *see United States v. Primm*, 63 F.4th 1186, 1192 (8th Cir. 2023).  "One reason for this extension to witness-credibility evidence is because exposure of a witness's motivation in testifying is a proper and important function of the constitutionally

protected right of cross-examination." *Sigillito*, 759 F.3d at 930 (quotation omitted).  The

Eighth Circuit "ha[s] determined that witness motivations, like the payment of money as

an incentive to change testimony, fall within the *Brady* disclosure requirement." *Id.*

(citing *United States v. Librach*, 520 F.2d 550, 554 (8th Cir. 1975)).  "Furthermore, the

prosecutor must disclose the possibility of a reward that gives the witness a personal

stake in the defendant's conviction." *Id.*  (citing *United States v. Bagley*, 473 U.S. 667,

683 (1985)).

Additionally, the "prosecutor has a duty to learn of any favorable evidence known

to others acting on the government's behalf in the case, including [law enforcement]."

*Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *accord Strickler v. Greene*, 527 U.S. 263,

281 (1999); *see Wright*, 866 F.3d at 908; *Robinson*, 809 F.3d at 996; *United States v.

Tyndall*, 521 F.3d 877, 882 (8th Cir. 2008).  "This attendant duty to learn of material and

favorable exculpatory or impeachment evidence necessarily anticipates that a prosecutor

will have an opportunity to discover such evidence through the exercise of reasonable

diligence." *Robinson*, 809 F.3d at 996.

Defendants' motions are granted in part to the extent that the Government shall

comply fully with its obligations under *Brady*, *Giglio*, and their progeny and disclose

promptly all exculpatory and impeachment evidence as well as Jencks Act, 18 U.S.C.

§ 3500, and Federal Rule of Criminal Procedure 26.2 materials as required.  *See United

States v. Mazzulla*, 932 F.3d 1091, 1100 (8th Cir. 2019).  If the Government subsequently

discovers additional exculpatory or impeachment evidence, it shall disclose such

evidence as soon as practicable after such discovery.  To the extent Defendants seek

discovery and disclosures outside the Government's obligations, materials that have already been produced, or the establishment of a date certain for disclosure, their motions are denied. *See Johnson*, 228 F.3d at 924; *see also United States v. Szczerba*, 897 F.3d 929, 941 (8th Cir. 2018) ("Under the rule in our circuit *Brady* does not require pretrial disclosure, and due process is satisfied if the information is furnished before it is too late for the defendant to use it at trial." (quotation omitted)).

## VIII. GRAND JURY MOTIONS

Solomon's Pretrial Motion for Disclosure of Grand Jury Minutes and Transcript, ECF No. 115, and Rice's Motion for Disclosure of Grand Jury Materials, ECF No. 182, are **GRANTED IN PART** and **DENIED IN PART**.

Solomon and Rice request disclosure of grand jury materials on the grounds that "[t]he [I]ndictment may be based upon evidence illegally obtained"; "[t]he transcript is necessary to show that grounds exist to support a motion to dismiss the Indictment because of matters occurring before the grand jury"; and "[t]he evidence presented is necessary for the purpose of impeaching the prosecution witnesses, to refresh their recollection, and to test their credibility." ECF No. 115 at 1; *see also* ECF No. 182 at 2 (arguing materials "necessary for the preparation of the defense in this case, including to prepare to impeach, refresh the recollection of, and test the credibility of the prosecution's witnesses at trial, and to discover the substance of any oral, unrecorded statements of informants, alleged co-conspirators, and potential witnesses who could testify against Defendant at trial").

The Government reaffirms that it "will comply with its obligations under the

Jencks Act, Federal Rule of Criminal Procedure 26.2, and Federal Rule of Criminal Procedure 12(h), as well as its obligations under *Brady* . . . , *Giglio* . . . , and their progeny."[5] Gov't Consol. Resp. at 7. The Government otherwise objects to disclosure.

"It has long been recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings. This principle is reflected in Rule 6(e) which establishes a general rule of confidentiality for all matters occurring before the grand jury." *United States v. McDougal*, 559 F.3d 837, 840 (8th Cir. 2009) (quotation and citation omitted). "Exceptions to the rule of nondisclosure will be made only where there is a 'particularized need.'" *United States v. Haire*, 103 F.3d 697, 699 (8th Cir. 1996); *accord United States v. Broyles*, 37 F.3d 1314, 1318 (8th Cir. 1994) ("It is well-established that a showing of 'particularized need' is necessary before the court will accede to such a release.").

Defendants have not made any showing of particularized need for such materials beyond the grand jury testimony of any witnesses who will testify at trial. *See Haire*, 103 F.3d at 699 (no particularized need demonstrated for disclosure beyond receipt of "transcripts of the grand jury testimony of all witnesses who testified at trial"). Therefore, Defendants' motions are denied except to the extent the Government is otherwise obligated to disclose such materials. *See United States v. Daniels*, 232 F. App'x 611, 612 (8th Cir. 2007) (per curiam) (no abuse of discretion in denying motion for grand jury transcripts given defendant's "failure to make any showing in support of

---

[5] The Government notes that "none of the [D]efendants testified before the grand jury in this case." Gov't Consol. Resp. at 7.

his request for them"); *Broyles*, 37 F.3d at 1318.

## IX. DISCLOSURE OF INFORMANTS

Solomon's Motion for Disclosure of the Identity of All Informants, ECF No. 109, Solomon's Pretrial Motion to Disclose and Make Informant Available for Interview, ECF No. 118, Rice's Motion for Disclosure of the Identity of Informants, ECF No. 183, Burrell's Motion to Reveal Informants and Make Them Available for Interview, ECF No. 99, Noble's Motion to Disclose and Make Informants Available for Interview, ECF No. 148, and Holt's oral request[6] for the same, are **GRANTED IN PART** and **DENIED IN PART**.

Defendants move for disclosure of and the opportunity to interview informants utilized by the Government in the investigation of this matter.   "The [G]overnment asserts the informant privilege as to any confidential informants identified in the discovery materials or relied upon during the ongoing investigation into the Minneapolis Bloods street gang."   Gov't Consol. Resp. at 4.   At the same time, the Government states that it "does intend to call at least one informant in its case in chief at trial to provide evidence of the RICO conspiracy charged, along with some of the violent overt acts alleged in the Indictment."   Gov't Consol. Resp. at 5.   The Government additionally states that it "will disclose to the defense the identities of any informants and cooperating witnesses relating to the charges that end up going to trial."   Gov't Consol. Resp. at 6.   At the hearing, a defense proposal of disclosure 21 days before trial was offered, which was acceptable to the Government.

---

[6] At the hearing, Holt orally moved to join in these motions as well.

"In *Roviaro v. United States*, the Supreme Court recognized the government's privilege to withhold the identity of a confidential informant." *United States v. Alcantar*, 271 F.3d 731, 739 (8th Cir. 2001) (citing 353 U.S. 53, 59 (1957)).   In determining whether disclosure of an informant's identity is required, "the threshold issue is whether the informant is a material witness." *Carpenter v. Lock*, 257 F.3d 775, 779 (8th Cir. 2001); *see United States v. Barnes*, 486 F.2d 776, 778 (8th Cir. 1973) ("Certainly one of the most relevant factors to be weighed by the court is whether or not the evidence is *material* to the accused's defense or a fair determination of the case." (footnote omitted)).

"Where the witness is an active participant or witness to the offense charged, disclosure will almost always be material to the accused's defense." *Devose v. Norris*, 53 F.3d 201, 206 (8th Cir. 1995) (emphasis added) (footnote omitted); *see also Barnes*, 486 F.2d at 778-79.   "In cases involving 'tipsters' who merely convey information to the government but neither witness nor participate in the offense, disclosure is generally not material to the outcome of the case and is therefore not required." *United States v. Harrington*, 951 F.2d 876, 878 (8th Cir. 1991) (citing *United States v. Bourbon*, 819 F.2d 856, 860 (8th Cir. 1987)); *accord United States v. Lapsley*, 334 F.3d 762, 764 (8th Cir. 2003) ("Consequently, disclosure is typically not required when the informant merely conveys information to the government but neither witnesses nor participates in the offense." (quotations omitted)); *Alcantar*, 271 F.3d at 739 (government had no obligation to reveal informant's identity where informant did not participate in crime charged or testify at trial).

Defendants bear the burden of showing beyond mere speculation that disclosure will be material and helpful to their case. *United States v. Roberson*, 439 F.3d 934, 940 (8th Cir. 2006); *Alcantar*, 271 F.3d at 739. "If a trial court orders disclosure absent a showing of materiality, it abuses its discretion." *United States v. Bias*, No. 17-cr-318(06) (SRN/FLN), 2018 WL 3336770, at *2 (D. Minn. July 6, 2018).

Defendants' motions are granted in part to the extent that the Government shall—to the extent it has not done so already and in the future as may be developed in the course of its ongoing investigation—identify any informants and cooperating individuals who "were percipient witnesses to the crimes" charged, "will be witnesses at . . . trial," or "whose testimony will be material to the determination of the case against [Defendants]" no later than 21 days before trial. *Bias*, 2018 WL 3336770, at *2. Defendants' motions are further granted in part to the extent that the Government shall comply fully with its obligations under *Brady*, *Giglio*, and their progeny with respect to such individuals. To the extent Defendants seeks discovery and disclosures outside the Government's obligations regarding such individuals, their motions are denied.

As for Defendants' request that the Government make these individuals available for an interview, Defendants have requested that the Government provide the individuals' names and contact information (including addresses and phone numbers). The Government opposes a blanket order directing that such information be provided as to all informants. In its response, the Government asserted that "at least two informants in this case have been the subject of threats that federal agents have deemed credible and are the subject of ongoing investigative efforts." Gov't Consol. Resp. at 6. At the hearing, the

Government clarified that it was not accusing any of Defendants of any specific acts of intimidation in this particular case, but reiterated the concerns previously articulated in this matter. *See generally, e.g.*, ECF No. 193 at 6-13. The Government proposed that it would either provide the individual's contact information or make arrangements for the individual to meet with defense counsel depending on the preferences of the particular individual.

The Eighth Circuit "has applied *Roviaro* to impose a duty on the government to make every reasonable effort to have an informant shown to be a material witness made available to the defendant to interview or use as a witness." *United States v. Padilla*, 869 F.2d 372, 376 (8th Cir. 1989) (quotation omitted); *see Barnes*, 486 F.2d at 779-80; *see also United States v. Sanchez*, 429 F.3d 753, 756 (8th Cir. 2005); *Devose*, 53 F.3d at 206; *Bias*, 2018 WL 3336770, at *3. "[T]he Government's disclosure obligation with respect to confidential informants is generally satisfied when it provides a defendant with information pertaining to an informant's identity and location so that the defendant may contact the informant and request an interview or subpoena his or her testimony at trial." *United States v. Abari*, No. 19-cr-103 (MJD/ECW), 2020 WL 1983732, at *5 (D. Minn. Apr. 27, 2020) (citing *Padilla*, 869 F.2d at 376-77); *see Sanchez*, 429 F.3d at 756. "If the Government has particular concerns about protecting these individual[s] or is aware that the Defendants may encounter difficulty in locating . . . [these individuals], then it should produce [them] to Defendants to interview in lieu of providing . . . [their] address[es] to Defendants." *Abari*, 2020 WL 1983732, at *5. Regardless of the means of production, such individuals "always have the right to decline to be interviewed and the Government

has no obligation to 'encourage' . . . [them] to speak to Defendants." *Id.* (citing *United States v. Bittner*, 728 F.2d 1038, 1041-42 (8th Cir. 1984)). For those informants and cooperating individuals who were percipient witnesses to the crimes charged, will be witnesses at trial, or whose testimony will be material to the determination of the case against Defendants, the Government shall either provide the individual's contact information to defense counsel or make arrangements for the individual to meet with defense counsel depending on the preferences of the particular individual. And again, such individuals may decline a request to be interviewed.

To the extent Defendants seek identification of and information regarding any other informants or cooperating individuals, including non-testifying individuals not otherwise encompassed within the Government's disclosure obligations, their motions are further denied as they have failed to meet their burden of demonstrating the need for disclosure of these individuals. *See Alcantar*, 271 F.3d at 739; *United States v. Hollis*, 245 F.3d 671, 674 (8th Cir. 2001).

## X. SEVERANCE

Defendants move to sever their trials from one another, and Solomon, Burrell, and Noble move to sever certain counts.

### A. The Indictment

This case involves multiple counts based on a series of alleged violent crimes and narcotics offenses stemming from alleged membership and association with an alleged criminal organization described as the "Minneapolis Bloods Enterprise" (the "Bloods"). *See generally* ECF No. 1. The charges include one count of racketeering conspiracy in

violation of 18 U.S.C. § 1962(d); two counts of using and carrying a firearm during and in relation to a crime of violence resulting in death in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A) and (j); *see* 18 U.S.C. §§ 1111, 1959(a)(1); one count of conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; one count of possession with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and one count of possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A)(i). *See generally* ECF No. 1.

Count 1 charges Solomon and Rice with racketeering conspiracy. Count 1 contains the allegations regarding alleged membership and association with the alleged Bloods enterprise. While only Solomon and Rice are charged with Count 1, Burrell and Holt are referenced in Count 1 as allegedly participating in certain overt acts, described below, in furtherance of the conspiracy. *See, e.g.*, ECF No. 1 at 7-9. Noble is not referenced in Count 1.

Count 1 alleges that purposes of the Bloods enterprise include, among other things, "[e]nriching the leaders, members, and associates of the enterprise through, among other things, illegal trafficking and distribution of controlled substances and firearms"; "[p]reserving and protecting the power, territory, reputation, and profits of the enterprise through threats, intimidation, violence, and destruction, including, but not limited to, acts involving murder, robbery, assault, and other acts of violence"; "[k]eeping victims in fear of the enterprise and in fear of its leaders, members, and associates through threats of violence and actual violence"; and "[a]ttacking  and retaliating against

rival gang members through acts of violence, including but not limited to, acts involving murder, assault, and other acts of violence."  ECF No. 1 at 4-5.

The overt acts alleged in furtherance of the conspiracy charged in Count 1 include: (1) an assault against an individual at a nightclub alleged to have been committed by Solomon, Burrell, and other Bloods members, ECF No. 1 at 7; (2) a shooting on the same day, resulting in the death of another individual, alleged to have been committed by Solomon, Burrell, and another Bloods member, ECF No. 1 at 7-8; *see also* ECF No. 1 at 11-12; (3) a "physical[] attack[]" on a third individual at a bar alleged to have been committed by Solomon, Holt, and other Bloods members, ECF No. 1 at 8; (4) the shooting of a fourth individual soon thereafter alleged to involve Solomon, Holt, and another Bloods member, in which Holt allegedly shot first at the fourth individual and another Bloods member continued shooting at the individual as the individual "attempted to run away," resulting in the individual's death, ECF No. 1 at 9; *see also* ECF No. 1 at 13-14; and (5) the possession and sale of pills containing fentanyl, methamphetamine, and heroin by Rice between approximately July 2021 and February 2022, ECF No. 1 at 8.

Count 2 charges Solomon and Burrell with using and carrying a firearm during and in relation to a crime of violence resulting in death for the shooting described in (2) above.  Count 3 charges Solomon and Holt with using and carrying a firearm during and in relation to a crime of violence resulting in death for the shooting described in (4) above.  Counts 2 and 3 incorporate by reference prior allegations related to the alleged Bloods enterprise.

Count 4 charges Rice and Noble with conspiracy to distribute controlled

substances, namely, mixtures or substances containing fentanyl or a fentanyl analogue, "[f]rom in or about 2021, and continuing through at least on or about February 25, 2022." ECF No. 1 at 14-15.

Counts 5 and 6 are charges only against Noble. Count 5 charges Noble with possession with intent to distribute controlled substances, namely, methamphetamine, "[o]n or about February 5, 2022." ECF No. 1 at 15. Count 5 charges Noble with possession of a firearm in furtherance of drug trafficking "[o]n or about February 5, 2022," in connection with the narcotics offenses charged in Counts 4 and 5. ECF No. 1 at 15-16.

### B. Severance of Defendants

Solomon's Pretrial Motion for Severance, ECF No. 120, Rice's Motion to Sever Defendant, ECF No. 188, Holt's Motion to Sever Defendant, ECF No. 170, Burrell's Motion for Severance of Defendants, ECF No. 102, and Noble's Motion for Severance of Defendants, ECF No. 150, are **DENIED WITHOUT PREJUDICE**.

"When a defendant moves for a severance, a district court must first determine whether joinder is proper under Federal Rule of Criminal Procedure 8. If joinder is proper, the court still has discretion to order a severance under Federal Rule of Criminal Procedure 14." *United States v. Darden*, 70 F.3d 1507, 1526 (8th Cir. 1995). The Federal Rules of Criminal Procedure are "liberally construed in favor of joinder" and joinder of defendants in the federal system commonly occurs. *See United States v. Rimell*, 21 F.3d 281, 288 (8th Cir. 1994); *Darden*, 70 F.3d at 1526; *see also United States*

*v. Thao*, No. 21-cr-108 (2-4) (PAM/TNL), 2021 WL 5564557, at \*2, 7 (D. Minn. Nov. 29, 2021).

Holt and Noble assert that they were improperly joined under Rule 8(b).  All Defendants assert that severance should be ordered under Rule 14.

### 1.  Proper Joinder

Pursuant to Rule 8, an indictment

> may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count.

Fed. R. Crim. P. 8(b).  "Generally, the 'same series of acts or transactions' means acts or transactions that are pursuant to a common plan or a common scheme."  *United States v. Wadena*, 152 F.3d 831, 848 (8th Cir. 1998) (citing *United States v. Jones*, 880 F.2d 55, 61 (8th Cir. 1989)).  Further, the Eighth Circuit has held that, "[i]n general, persons charged in a conspiracy or jointly indicted on similar evidence from the same or related events should be tried together."  *United States v. Donnell*, 596 F.3d 913, 923 (8th Cir. 2010) (quotation omitted); *accord Jones*, 880 F.2d at 63; *see also United States v. Bledsoe*, 674 F.2d 647, 656 (8th Cir. 1982) ("Rule 8(b) requires that there be some common activity involving all of the defendants which embraces all the charged offenses even though every defendant need not have participated in or be charged with each offense."), *abrogated on other grounds by United States v. Lane*, 474 U.S. 438 (1986).  But, "mere similarity of offenses committed by two or more individuals is not a sufficient

24

predicate for joinder." *Bledsoe*, 674 F.2d at 656. "An indictment must reveal on its face a proper basis for joinder." *Wadena*, 152 F.3d at 848; *see, e.g.*, *United States v. Reichel*, 911 F.3d 910, 915 (8th Cir. 2018).

According to the Government, "[a]ll defendants are properly joined under Rule 8(b) because they are members of the Minneapolis Bloods—the RICO enterprise, along with every other defendant named in the Indictment." Gov't Consol. Resp. at 12. The Government asserts that Counts 2 through 6 are substantive counts "in aid of the same enterprise charged in Count 1" and reflect activity "undertaken as a member of the Minneapolis Bloods." Gov't Consol. Resp. at 13; *see also id.* ("Defendants' criminal conduct stemmed from that enterprise, was conducted with other enterprise members, and was designed to promote the goals of that enterprise."). The Government asserts that "[s]uch joint participation is more than sufficient to defeat Defendants' general arguments that each should be tried separately, especially given they are charged as part of a RICO prosecution." Gov't Consol. Resp. at 13.

**Holt.** In a single sentence, without articulating any basis for his contention that he was improperly joined with his co-defendants, Holt asserts that he was "not properly joined under Fed. R. Crim. P. 8(b)." ECF No. 170 at 1. The Court will not make arguments for Holt. In any event, along with Solomon, Holt is charged in Count 3 with committing an act in furtherance of the alleged Bloods enterprise charged in Count 1 and is therefore linked by the overall alleged scheme. *See United States v. Liveoak*, 377 F.3d 859, 865 (8th Cir. 2004); *Bledsoe*, 674 F.3d at 656-57; *see also Wadena*, 152 F.3d at 848, 849 n.26; *Rimell*, 21 F.3d at 289.

**Noble.**   Noble asserts that he was improperly joined with Solomon, Holt, and Burrell because the Indictment does not allege that he "participated in the same act or transaction, or series of acts or transactions, with these co-defendants."  ECF No. 150 at 3.  Noble points out that he is not referenced at all as part of the racketeering conspiracy charged in Count 1 or the firearms charges in Counts 2 and 3 against Solomon, Burrell, and Holt.  At the hearing, Noble additionally asserted that there are no allegations in the Indictment that he is a member of the Bloods.

In support of its assertion that "[a]ll [D]efendants are properly joined under Rule 8(b) because they are members of the Minneapolis Bloods . . . along with every [D]efendant named in the Indictment," the Government cites pages one through ten of the Indictment.  Gov't Consol. Resp. at 12 ("*See* Indictment at 1-10.").  Pages one through ten of the Indictment are the allegations related to the racketeering conspiracy charged in Count 1.  As noted above, while each of Noble's co-defendants are mentioned in these allegations, Noble is not.  Nowhere is it alleged in the Indictment that Noble is a members of the Bloods.  The narcotics offenses alleged as overt acts in connection with Count 1 mention Rice but do not, for example, allege that Rice acted with other Bloods members.  *Compare, e.g.*, ECF No. 1 at 7 (referencing Solomon, Burrell, "and other Bloods members"), 8 (referencing Solomon, Holt, "and other Bloods members"), *with* ECF No. 1 at 8 (referencing only Rice).  Likewise, while the Government asserts that Noble's "drug trafficking activity undertaken as a member of the Minneapolis Bloods is charged in Counts Four, Five, and Six," Counts 4 through 6 do not mention or

incorporate by reference allegations related to the alleged Bloods enterprise, unlike Counts 2 and 3.

While it may be that Noble is not expressly alleged to be a member of the Bloods, the Court nevertheless finds that, when the Indictment is read as a whole, Noble is inferentially linked to his co-defendants by the overall alleged scheme based on allegations that Noble participated in acts connected with the alleged Bloods enterprise through the alleged related narcotics conspiracy with Rice—who is also charged as part of the racketeering conspiracy—and the allegations of how trafficking in controlled substances fits into that alleged enterprise. *See Liveoak*, 377 F.3d at 865; *Wadena*, 152 F.3d at 848, 849 n.26; *Rimell*, 21 F.3d at 289; *see also United States v. Thompson*, 690 F.3d 971, 988 (8th Cir. 2012). *Contra Bledsoe*, 674 F.3d at 655 ("indictment did not allege, even inferentially, any connection" between counts and conduct of other defendants). Moreover, the Eighth Circuit "has recognized that when the indictment invites joint proof prima facie validity of joinder is shown." *Rimell*, 21 F.3d at 289 (quotation omitted). Here, "the counts charging . . . Noble with drug trafficking and possession of a firearm in furtherance of that drug trafficking stem from the same [racketeering] enterprise and are provable by the same evidence and witness testimony." Gov't Consol. Resp. at 15.

In sum, the Court concludes that joinder of Holt and Noble was proper under Rule 8(b).

## 2.  Severance Based on Prejudice

Defendants move for severance under Rule 14, asserting that the jury will be unable to compartmentalize the evidence against them and each will be prejudiced by the unfavorable conduct his co-defendants are alleged to have participated in, but with which he himself has not been charged.[7]   Defendants therefore assert that severance is warranted to protect against guilt by association.

Although Rule 8 permits joinder, "a trial court may order separate trials on different counts, or sever certain defendants' cases from others', to protect defendants' fair-trial rights."  *United States v. Delpit*, 94 F.3d 1134, 1143 (8th Cir. 1996) (citing Fed. R. Crim. P. 14(a); *Darden*, 70 F.3d at 1527).  Severance is warranted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *Zafiro v. United States*, 506 U.S. 534, 539 (1993).   Where multiple defendants have been charged in the same indictment, "there is a preference for a joint trial unless the benefits are outweighed by a clear likelihood of prejudice."  *United States v. Hively*, 437 F.3d 752, 765 (8th Cir. 2006) (citing *Zafiro* 506 U.S. at 537); *see, e.g.*, *United States v. McCarther*, 596 F.3d 438, 442 (8th Cir. 2010) ("[T]here is a strong presumption against severing properly joined counts."); *see also, e.g.*, *Thao*, 2021 WL 5564557, at *3.  "[T]here is no requirement in a joint trial that the quantum of evidence of each defendant's culpability be equal."  *United States v. Flores*, 362 F.3d 1030, 1042 (8th Cir. 2004) (quotation omitted).  Moreover, "disparity among the defendants in extent

---

[7] *See infra* n.8.

of involvement and culpability is commonplace in conspiracy cases and does not alone show the kind of prejudice that would require a district court to sever, rather than to respond with some less drastic measure such as a curative instruction." *United States v. Spotted Elk*, 548 F.3d 641, 658 (8th Cir. 2008); *accord United States v. May*, 70 F.4th 1064, 1071 (8th Cir. 2023).

"Consequently, [Defendants] carr[y] a heavy burden in demonstrating that severance is mandated." *United States v. Young*, 753 F.3d 757, 777 (8th Cir. 2014). A defendant seeking severance must show that a joint trial would cause "real prejudice." *Mickelson*, 378 F.3d at 817-18; *see United States v. Pherigo*, 327 F.3d 690, 693 (8th Cir. 2003) ("necessary prejudice must be severe or compelling" (quotation omitted)). This is "something more than the mere fact that [a defendant] would have had a better chance for acquittal had he been tried separately." *Mickelson*, 378 F.3d at 818 (quotation omitted); *see also Hively*, 437 F.3d at 765 ("Severance is never warranted simply because the evidence against one defendant is more damaging than against another.").

"A defendant seeking severance can demonstrate prejudice to his right to a fair trial by showing . . . that the jury will be unable to compartmentalize the evidence as it relates to the separate defendants."[8] *May*, 70 F.4th at 1071 (quotation omitted); *see, e.g.*,

---

[8] "A defendant seeking severance can [also] demonstrate prejudice to his right to a fair trial by showing that his defense is irreconcilable with that of his co-defendant . . . ." *May*, 70 F.4th at 1071 (quotation omitted); *see, e.g.*, *United States v. Anderson*, 783 F.3d 727, 743 (8th Cir. 2015); *United States v. Lewis*, 557 F.3d 601, 610 (8th Cir. 2009); *Mickelson*, 378 F.3d at 818. "[T]he existence of antagonistic defenses does not require severance unless the defenses are actually irreconcilable." *Lewis*, 557 F.3d at 609-10 (quotation omitted). "A defense is irreconcilable when the jury, to believe the core of one defense, must necessarily disbelieve the core of another." *Id.* (quotation omitted); *accord Anderson*, 783 F.3d at 743. "Antagonistic defenses require severance only when there is a danger that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." *Lewis*, 557 F.3d at 610 (quotation omitted); *accord Anderson*, 783 F.3d at 743. Burrell asserts that he and his co-defendants "have antagonistic defenses that will be reciprocally prejudicial." ECF No. 102 at 1. There is nothing before the Court

*Anderson*, 783 F.3d at 743; *Lewis*, 557 F.3d at 609; *Mickelson*, 378 F.3d at 818. "Prejudice can be demonstrated by showing that the jury will be unable to compartmentalize the evidence as it relates to the separate defendants because of a 'prejudicial spillover effect.'" *Hively*, 437 F.3d at 765 (quoting *Mickelson*, 378 F.3d at 817). This requires a defendant to make "a specific showing that a jury could not reasonably be expected to compartmentalize the evidence." *Id.* (citations omitted); *see United States v. Sotelo-Valdovinos*, No. 14-cr-289 (11) (SRN/JSM), 2015 WL 2454048, at *4 (D. Minn. May 22, 2015) ("[A] defendant seeking severance has the heavy burden of demonstrating that a joint trial will impermissibly infringe his right to a fair trial.") (internal quotation omitted); *see also, e.g.*, *United States v. Chen*, No. 21-cr-250 (JRT/TNL), 2023 WL 2424269, at *4 (D. Minn. Mar. 9, 2023); *Thao*, 2021 WL 5564557, at *5.

Finally, the Court must further balance "the inconvenience and expense of separate trials against the prejudice resulting from a joint trial." *Pherigo*, 327 F.3d at 693; *see also Hively*, 437 F.3d at 765 (where multiple defendants have been charged in the same indictment, "there is a preference for a joint trial unless the benefits are outweighed by a clear likelihood of prejudice"). "Trying codefendants together not only conserves scarce time and resources, but also 'gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome.'" *Hively*, 437 F.3d at 765 (quoting *Darden*, 70 F.3d at 1528). "Only in an unusual case will any

---

indicating in what way Burrell's defenses may be antagonistic to that of his co-defendants, let alone any articulation of the way(s) in which any such defenses are irreconcilable such that his trial must be severed. Likewise, Holt cursorily asserts that severance is warranted because his "Fifth Amendment right to avoid self-incrimination would be jeopardized by joinder" without any sort of explanation as to how that is the case here.

prejudice resulting from the ability of a jury to separate evidence be substantial enough to outweigh the general efficiency of joinder." *United States v. Martin*, 777 F.3d 984, 995 (8th Cir. 2015) (quotation omitted). "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." *Zafiro*, 506 U.S. at 541.

At this stage, Defendant have not made the requisite "*specific* showing" to warrant severance. *Hively*, 437 F.3d at 765 (emphasis added). While Defendants argue that evidence relating to certain of their co-defendants' charges for conduct in which they themselves are not implicated will be prejudicial to them, their arguments are largely speculative. They have not shown that "adequate jury instructions and admonitions by the trial judge would be [in]sufficient in this case to assist the jury's ability to compartmentalize the evidence and prevent prejudice," *Chen*, 2023 WL 2424269, at *4; *see Martin*, 777 F.3d at 995-96 ("careful and thorough" jury instructions "addressed any risk of prejudice created by the complexity of the case" (quotation omitted)). Nor is severance warranted, as Holt asserts, on the basis that "[e]vidence may be introduced by co-defendants which would be inadmissible as to . . . [him] in a separate trial." ECF No. 170 at 1. *See Delpit*, 94 F.3d at 1143 ("Severance is not required merely because evidence which is admissible only against some defendants may be damaging to others . . . ."). Moreover, as previously discussed, Counts 2 through 6 are "factually interrelated" to the alleged Bloods enterprise. *United States v. Mueller*, 661 F.3d 338, 348 (8th Cir. 2011); *cf. Delpit*, 94 F.3d at 1142-43.

As Defendants have not met their burden to show that a joint trial will infringe upon their right to a fair trial or result in a clear likelihood of prejudice, their motions are denied.  Even though severance is not appropriate at this time, developments may occur as this case moves closer to trial and even as the parties' strategies unfold during trial that may justify severance.  The district judge, within that judge's sound discretion, can provide that remedy if appropriate under the circumstances at that time should it occur in the future.  Thus, the denial of severance is without prejudice.

Finally, Defendants are reminded that even if they were to show prejudice in the future, the remedy would not necessarily be severance.  As stated by the Supreme Court in *Zafiro*, "Rule 14 does not require severance even if prejudice is shown; rather it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." 506 U.S. at 538-39.  The Eighth Circuit has repeatedly held that "[t]he risk of prejudice posed by joint trials is best cured by careful and thorough jury instructions."  *Mickelson*, 378 F.3d at 818; *see, e.g.*, *United States v. Sanchez-Garcia*, 685 F.3d 745, 754 (8th Cir. 2012) ("The risk of prejudice in a joint trial is best addressed by jury instructions . . . ."); *United States v. Boone*, 437 F.3d 829, 838 (8th Cir. 2006) ("Where multiple defendants are tried together, the risk of undue prejudice is best cured through cautionary instructions to the jury . . . ."); *Delpit*, 94 F.3d at 1144 ("The Supreme Court has made it clear that the risk of prejudice posed by joint trials is best cured by careful and thorough jury instructions like those given by the District Court in this case.").

### C. Severance of Counts

Solomon's Pretrial Motion for Severance of Counts, ECF No. 119, Burrell's

Motion for Severance of Counts, ECF No. 101, and Noble's Motion for Severance of Counts, ECF No. 155, are **DENIED WITHOUT PREJUDICE**.

Solomon and Burrell move to sever Count 2, charging them with using and carrying a firearm during and in relation to a crime of violence resulting in death. Noble moves to sever Counts 4, 5, and 6, from Counts 1, 2, and 3, counts with which he is not charged.

As stated above, Rule 8 permits the joinder of "2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b); *see United States v. Mann*, 701 F.3d 274, 289 (8th Cir. 2012). Count 2 charges Solomon and Burrell with an act in furtherance of the alleged Bloods enterprise charged in Count 1 and therefore is linked to the other counts by the overall alleged scheme. *See supra* Section X.B.1. It does not matter that Burrell himself is not also charged in both Count 1 and Count 2. *See* Fed. R. Crim. P. 8(b); *Delpit*, 94 F.3d at 1143 ("Importantly, not every defendant joined must have participated in every offense charged."); *see also Thompson*, 690 F.3d at 988; *Liveoak*, 377 F.3d at 865. And, for the reasons stated above, the Court has concluded that the conduct charged in Counts 4, 5, and 6 against Noble is inferentially linked to the overall alleged scheme and the charges against Noble's co-defendants. *See supra* Section X.B.1.

Here too, the Court similarly concludes that, at this juncture, Solomon, Burrell, and Noble have not met their burden to show that severance of counts is warranted under Rule 14. The primary argument for severance is that joinder of all six offenses charged

will be prejudicial at trial "because it brings to the attention of the jury allegations and evidence of criminal conduct by others that in no way involves [the not-named defendant], which would otherwise not be admissible against [the not-named defendant]." ECF No. 119 at 2; *accord* ECF No. 101 at 1. But again, "severance is not required merely because evidence which is admissible only against some defendants may be damaging to others," *Delpit*, 94 F.3d at 1143; *accord United States v. Casteel*, 663 F.3d 1013, 1018-19 (8th Cir. 2011), and Solomon, Burrell, and Noble have not persuasively explained why, even if prejudice were to arise at trial, such prejudice could not be cured by carefully crafted jury instructions. *See supra* Section X.B.2. Although, for the same reasons the Court previously denied the motions to sever Defendants from one another without prejudice*, see supra* Section X.B.2, the Court will likewise deny Solomon, Burrell, and Noble's motions to sever counts without prejudice.

## XI. MOTIONS FOR A BILL OF PARTICULARS

Solomon's Pretrial Motion for Bill of Particulars, ECF No. 107, Rice's Motion for a Bill of Particulars, ECF No. 180, and Burrell's Motion for a Bill of Particulars, ECF No. 100, are **DENIED**.

Collectively, Solomon, Rice, and Burrell seek the names of all alleged co-conspirators and unindicted co-conspirators, including those individuals "known and unknown to the Grand Jury"; the dates each co-conspirator joined the alleged conspiracy; "[t]he dates, locations and participants of any meetings, conversations or other communications through which the [G]overnment contends each [co-conspirator] joined or personally participated in the conspiracy"; "[t]he names of any other non-conspirator

participants in the acts alleged"; and "[t]he names of all persons whom the [G]overnment will claim knowingly conspired with [them]."  ECF No. 107 at 1; *see* ECF No. 180 at 2; ECF No. 100 at 2-3.  Solomon asserts that "[t]here is no information in the Indictment regarding what this case will be about once the trial begins."  ECF No. 107 at 2.  Rice asserts that the allegations in the Indictment "refer to nothing more than garden variety conspiracy to distribute a controlled substance and offer no information regarding his purported participation in racketeering activity."  ECF No. 180 at 1.  Burrell asserts that, "[f]rom the discovery provided to date, there appears to be no conspiratorial association between [himself] and any of the other indicted defendants" and he is "entitled to know by what evidence the [G]overnment intends to prove such an association."  ECF No. 100 at 3.

"The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ."  Fed. R. Crim. P. 7(c)(1).

> An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution.

*United States v. Wessels*, 12 F.3d 746, 750 (8th Cir. 1993).  "An indictment is sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted."  *United States v. Milk*, 66 F.4th 1121, 1133 (8th Cir. 2023) (quotation omitted).

> A bill of particulars serves to inform the defendant of the nature of the charge against him with sufficient precision to

> enable him to prepare for trial, to avoid or minimize the
> danger of surprise at trial, and to enable him to plead his
> acquittal or conviction in bar of another prosecution for the
> same offense when the indictment is too vague and indefinite.

*United States v. Hernandez*, 299 F.3d 984, 989-90 (8th Cir. 2002); *accord United States v. Beasley*, 688 F.3d 523, 532 (8th Cir. 2012); *see Milk*, 66 F.4th at 1133; *United States v. Livingstone*, 576 F.3d 881, 883 (8th Cir. 2009).   "If a defendant believes that an indictment does not provide enough information to prepare a defense, then he or she may move for a bill of particulars." *Livingstone*, 576 F.3d at 883 (citing Fed. R. Crim. P. 7(f)).

"A bill of particulars, however, is not a proper tool for discovery," and "it is not to be used to provide detailed disclosure of the government's evidence at trial." *Wessels*, 12 F.3d at 751; *see also, e.g.*, *Milk*, 66 F.4th at 1133; *United States v. Huggans*, 650 F.3d 1210, 1220 (8th Cir. 2011); *Livingstone*, 576 F.3d at 883; *cf. United Stats v. Maurya*, 25 F.4th 829, 837-38 (11th Cir. 2022) ("But a bill of particulars cannot be used as a weapon to force the government into divulging its prosecution strategy; we do not allow defendants to compel the government to detailed exposition of its evidence or to explain the legal theories upon which it intends to rely on at trial in that manner." (quotation omitted)).   "The district court, in its discretion, may order the government to provide requested additional detail where the particulars set out in the indictment fail sufficiently to apprise the defendant of the charges to enable him to prepare a defense." *United States v. Garrett*, 797 F.2d 656, 665 (8th Cir. 1986); *see United States v. Stephenson*, 924 F.2d 753, 762 (8th Cir. 1991) ("The trial court has broad discretion in granting or denying a

bill of particulars."). "[A]t the pre-trial stage, courts considering whether to grant a motion for a bill of particulars ask whether the defendant has been adequately informed of the charges such that he can prepare a defense and avoid surprise at trial." *United States v. Belfrey*, No. 14-cr-373 (ADM/TNL), 2016 WL 1301085, at *2 (D. Minn. Apr. 1, 2016).

Courts have repeatedly denied the sort of information requested by Solomon, Rice, and Burrell. *See, e.g.*, *Huggans*, 650 F.3d at 1220; *United States v. Pippenger*, 552 F. Supp. 2d 990, 992-94 (D. S.D. 2008); *United States v. Finn*, 919 F. Supp. 1305, 1325-26 (D. Minn. 1995); *see also, e.g.*, *United States v. Reid*, 650 F. Supp. 3d 182, 197 (S.D. N.Y. 2023) ("The Second Circuit and courts in the Southern District routinely have denied requests for bills of particulars concerning the wheres, whens, and with whoms of the crime charged. It is well settled that defendants need not know the means by which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the Government intends to adduce to prove their criminal acts. Details as to how and when the conspiracy was formed, or when each participant entered it, need not be revealed before trial." (quotations and citations omitted)).

The Court finds that, when read as a whole, the Indictment informs Solomon, Rice, and Burrell of the nature of the charges with sufficient precision to enable them to understand their respective charges, prepare a defense, and avoid or minimize the danger of unfair surprise at trial. With respect to the racketeering conspiracy alleged in Count 1 against Solomon and Rice, the Indictment describes the alleged Bloods enterprise, the structure and purpose of that enterprise, the manner and means of that enterprise, and the

overt acts alleged to have been committed in furtherance of the alleged conspiracy, including the approximate date and location of these acts as well as Solomon and Rice's involvement as applicable.  *See Finn*, 919 F. Supp. at 1326.   As to Solomon, the Indictment identifies four specific incidents in which he is alleged to have been involved.[9]  Rice's charges, both in Count 1 and in Count 4, which alleges he and Noble conspired to distribute controlled substances, are based on alleged narcotics offenses. Count 1 and Count 4 both set forth the timeframe of the alleged offenses and the type of narcotics involved.   *See Milk*, 66 F.4th at 1133.   Burrell is not charged with the racketeering conspiracy in Count 1, though he is mentioned as having participated, along with Solomon, in two of the overt acts alleged.  But again, the Indictment specifically identifies these two acts by date and location and Count 2 is factually interrelated to Count 1.

In addition, the Government has provided voluminous discovery in this matter.[10] *See* Gov't Consol. Resp. at 21; *see also generally* ECF Nos. 28 and 57 (motion seeking and order granting complex-case designation given the volume of discovery and the nature of the prosecution).  *See Milk*, 66 F.4th at 1133; *Huggans*, 650 F.3d at 1220.  The Court is also granting Solomon's motion for additional information in connection with his alleged involvement in the alleged Bloods enterprise.  *See infra* Section XII.C.

[9] Solomon's motion is rather unclear.  In his motion, Solomon requests a bill of particulars related to "the *single* charge against him."  ECF No. 107 at 1 (emphasis added).  Solomon is in fact charged with three counts: Counts 1, 2, and 3.  Because the information he seeks is focused on the conspiracy, the Court assumes that his motion is directed at Count 1, which charges him with racketeering conspiracy.  In any event, Counts 2 and 3, both of which charge Solomon with using and carrying a firearm during and in relation to a crime of violence resulting in death, are factually related to two of the overt acts identified in Count 1.

[10] In his motion, Solomon asserts the Government has failed to provide certain discovery.  ECF No. 107 at 2 n.1. Solomon's motion was filed before the Court's December 6, 2023 Order, addressing various discovery issues.  *See generally* ECF No. 193.

Lastly, pursuant to the order issued by the presiding district judge, the parties will need to disclose their witnesses no later than August 2, 2024, which is approximately 30 days prior to trial.  ECF No. 205 at 1, 3.

"Although the allegations are not as detailed as [Solomon, Rice, and Burrell] may prefer, that is not the test . . . [courts] apply.  A Bill of Particulars serves an essential function in eliminating surprise, but the Bill was not designed to substitute for pretrial discovery."  *Finn*, 919 F. Supp. at 1326 (footnote omitted); *see also, e.g.*, *Milk*, 66 F.4th at 1133; *Huggans*, 650 F.3d at 1220.  Pretrial discovery is essentially what Solomon, Rice, and Burrell are seeking here.

## XII. SOLOMON'S REMAINING MOTIONS

**A.**    Solomon's Motion to Join in Pretrial Motions of All Co-Defendants, ECF No. 116, is **DENIED AS MOOT**.  Solomon seeks an order permitting "him to adopt all pretrial motions of the co-defendant(s) that are applicable to his cause."  ECF No. 116 at 1.  At the hearing, when asked which motions he was seeking to join, Solomon indicated that he was not joining any of the motions filed by his co-defendants.

**B.**    Solomon's Pretrial Motion for List of Government Witnesses 30 Days Before Trial Date, ECF No. 117, is **GRANTED IN PART** and **DENIED IN PART**.  Solomon requests that the Government be ordered "to produce . . . a list of all persons and their addresses whom the [G]overnment intends to call as witnesses at trial, irrespective of whether the Government intends to utilize said witnesses in its case in chief, or rebuttal" "at least 30 days before the trial date."  ECF No. 117 at 1.  At the hearing, Solomon amended his request to 21 days before trial.

In its initial response, the Government objected to providing witness information in advance of trial except as may be ordered by the presiding district judge in connection with the filing of witness lists. The Government also objected to providing address information. At the hearing, the Government agreed to the 21 days proposed by Solomon.

Following the hearing, the district judge directed the parties to provide their proposed witness lists by August 2, 2024, which is approximately 30 days before the September 4, 2024 trial date. ECF No. 205 at 1, 3.

"A federal criminal defendant generally has no right to know about government witnesses prior to trial." *Polk*, 715 F.3d at 249; *see also, e.g.*, *United States v. Sandoval-Rodriguez*, 452 F.3d 984, 990 (8th Cir. 2006) ("As a general rule, a defendant in a noncapital case has no right to require disclosure of government witnesses." (quotation omitted)). Solomon's motion is granted in part to the extent that the parties shall disclose their witness lists no later than 12:00 p.m. on August 2, 2024 as directed by the district judge in preparation for trial. ECF No. 205 at 3. Solomon's motion is further granted in part to the extent that disclosure of witnesses has been ordered elsewhere in this Order or that the Government is otherwise obligated to disclose by law. Solomon's motion is otherwise denied.

**C.**      Solomon's sealed motion, ECF No. 154, is **GRANTED IN PART** and **DENIED IN PART**.[11]   At the hearing, Solomon explained that he was seeking certain law enforcement information related to his alleged membership in and association with the alleged Bloods enterprise.   The Government stated that it believed all of the underlying information had been produced, but would confirm that to be the case.   The Government further stated that it did not have an issue with disclosure of the requested law enforcement information as a general principle but may have to take certain protective measures depending on the circumstances, such as, for example, if an investigation was still ongoing.   Solomon was agreeable to having any such information be produced subject to the existing Protective Order.[12]   Solomon's motion is granted in part to the extent that there exists additional law enforcement information related to Solomon's alleged membership in and association with the alleged Bloods enterprise that has not yet been produced, has been ordered produced elsewhere in this Order, or that the Government is otherwise obligated to disclose by law.   Solomon's motion is otherwise denied.   *See Johnson*, 228 F.3d at 924.   The Government may designate such responsive information as appropriate under the operative Amended Protective Order.   *See generally* ECF No. 210.

---

[11] Solomon's motion and the Government's response thereto were filed under seal.   *See generally* ECF Nos. 154, 192.   At the hearing, the Court inquired as to whether the parties were comfortable discussing this motion on the record in open court.   Solomon indicated that the motion was filed under seal pursuant to the previously entered Protective Order and he was fine with the motion being discussed in open court.   *See generally* ECF No. 91.   The Government was also in agreement that the record did not need to be sealed.   Given what appears to be the parties' agreement for resolution at the hearing, it is not necessary to discuss the contents of the motion in greater detail.
[12] Following the hearing, the parties agreed to and the Court entered an Amended Protective Order.   *See generally* ECF Nos. 209 and 210.

## XIII. HOLT'S REMAINING MOTION

Holt's Motion to Retain Rough Notes, ECF No. 169, is **GRANTED**.  Holt moves "for an order requiring any law enforcement agent, including any confidential reliable informants, to retain and preserve all rough notes taken as part of their investigation, whether or not the contents of such rough notes are incorporated in official records." ECF No. 169 at 1.  The Government has no objection to this motion.  Gov't Consol. Resp. at 6.  Holt's request for the retention and preservation of all rough notes is granted.  To the extent it has not already done so, the Government shall direct its agents to preserve any rough notes pertaining to this matter.

## XIV. NOBLE'S REMAINING MOTIONS

**A.**  Noble's Motion for Rule 16 Discovery Regarding Forensic Testing and Experts, ECF No. 147, is **GRANTED IN PART** and **DENIED IN PART**.  Noble requests immediate disclosure of any reports of examinations and tests as well as expert witnesses under Fed. R. Crim. P. 16(a)(1)(F) and (G).  Noble also seeks certain DNA-related materials.  At the hearing, the Government represented that, while the DNA information had not yet been produced, the Government anticipated the information would be produced shortly.

Noble's motion is granted in part as set forth previously in this Order.  *See supra* Sections II, V.  To the extent the requested DNA information has not yet been produced, such information shall be produced as soon as practicable.  Noble's motion is otherwise denied.

**B.**     Noble's Motion for Early Disclosure of All Rule 1006 Exhibits and All Evidence Which Those Exhibits are Based, ECF No. 151, is **GRANTED IN PART** and **DENIED IN PART**.   Noble requests an order directing "the Government to disclose immediately all exhibits the Government intends to offer at trial pursuant to Rule 1006 of the Federal Rules of Evidence and all documents upon which those exhibits are based." ECF No. 151 at 1.   The Government "does not oppose an earlier deadline to be set by" the presiding district judge in preparation for trial, but "opposes an order compelling immediate generation and disclosure [of] such exhibits."   Gov't Consol. Resp. at 8.   The Government further states that it "has and will continue to comply with all of its discovery obligations under the Federal Rules of Criminal Procedure and applicable case law."   Gov't Consol. Resp. at 8.   At the hearing, Noble amended his motion to request disclosure 21 days before trial, and the Government agreed.

Following the hearing, the district judge ordered that all trial exhibits be provided by August 2, 2024, which again is approximately 30 days before the September 4 trial date.   ECF No. 205 at 1, 4.   Noble's motion is granted in part to the extent that the parties shall disclose any Rule 1006 exhibits and the documents upon which those exhibits are based no later than 12:00 p.m. on August 2, 2024, as directed by the district judge in preparation for trial.   ECF No. 205 at 4; *see* Fed. R. Evid. 1006; *see also United States v. Streb*, 477 F. Supp. 3d 835, 854-55 (S.D. Iowa 2020), *aff'd*, 36 F.4th 782 (8th Cir. 2022). Noble's motion is otherwise denied.

## XV. PRIOR ORDERS & REMEDIES

All prior consistent orders remain in full force and effect.  Failure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like.


Date: February__2__, 2024                                    _____*s/ Tony N. Leung*_____
                                                             Tony N. Leung
                                                             United States Magistrate Judge
                                                             District of Minnesota

                                                             *United States v. Solomon et al.*
                                                             Case No. 23-cr-156 (SRN/TNL)